

**FILED**
**JUNE 29, 2010**
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| CHARLES D. COOK d/b/a<br>COOK'S OILFIELD SERVICE,<br><br>  Plaintiff/Counter-Defendant,<br><br>and<br><br>M.J. BROGDIN CONSULTING, L.P.,<br><br>  Intervenor-Plaintiff/Counter-Defendant,<br><br>v.<br><br>ADMIRAL INSURANCE COMPANY,<br><br>  Defendant/Counter-Plaintiff. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§   Civil Cause No. 2:09-CV-0109-J<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## <u>OPINION</u>

Plaintiff, Charles D. Cook d/b/a Cook's Oilfield Service filed suit against Admiral Insurance Company seeking recovery on a commercial general insurance policy issued by Admiral to Cook. Admiral counterclaimed and seeks summary judgment that it has no duty to defend Cook against claims brought against Cook by intervening plaintiff, M.J. Brogdin Consulting, L.P. in Texas state court or to indemnify Cook for any judgment against Cook in that case.

## BACKGROUND

Plaintiff Cook was hired by intervening plaintiff, M.J. Brogdin Consulting, L.P., to deliver and oversee the running of casing on a well in Lipscomb, County, Texas. Cook removed too much casing from the site. Because of Cook's error, the well was completed at a depth shallower than that specified. The well had to be reworked to be completed to the specified depth at a cost of $336,745.63. Cook filed this suit alleging that claim had been made against Cook for the cost of that operation.

Brogdin filed suit against Cook in the 31st District Court in Lipscomb County, Texas. Brogdin's state court petition alleged the following:

> 6. The defendant was to provide the following services to plaintiff: deliver and oversee the running of casing on a well in Lipscomb County, Texas.
> 7. Defendant removed more casing from the well site than it should, thereby resulting in a failure to complete the well to the desired depth, necessitating an expensive rework of the well, proximately causing damage to plaintiff. The breach by defendant occurred during the delivery and removal of casing to the well site.
> 9. [sic] Plaintiff (and B&B Operating) spent the amounts of money to mitigate the damages caused by defendant, which are in excess of the minimum jurisdictional limits of this court.
> 10. Plaintiff must reimburse B&B Operating for the funds paid by B&B Operating to mitigate damages caused by defendant, to the damage of plaintiff.

Cook requested that Admiral Insurance Company, its Commercial Liability Insurance Carrier, provide a defense to the suit.

In response, Admiral sent Cook a letter on September 17, 2009, stating:

> You have demanded a defense to Cause No. 09-05-4162, *M.J. Brogdin Consulting, L.P. v. Charles Dewayne Cook*; in the 31st District Court in and for Lipscomb County, Texas. **Admiral will provide you with an attorney to defend you against the M.J. Brogdin Consulting, L.P. lawsuit, subject to Admiral's reservation of its rights to contest coverage in this matter.** (emphasis in original).

The letter also emphasized that Cook's claim might not be covered under the policy and that Admiral reserved all rights and defenses under the terms, conditions, and provisions of the policy. The letter then stated:

> Admiral reserves the right to seek a judicial ruling that one or more of the policy provisions discussed above apply to preclude any duty to defend or indemnify Charles D. Cook, D/B/A Cook's Oilfield Service against the *M.J. Brogdin* suit. While Admiral believes that there may be no coverage for this claim, it is still willing to provide a defense under the Admiral Policy at this time, conditioned upon a full reservation of its rights, including the possibility of a declaratory judgment action to determine Admiral's continuing defense obligations, if any. This reservation of rights includes the right to refuse any payment for settlement and/or judgment that

may be assessed against Charles D. Cook, D/B/A Cook's Oilfield Service, or any other person or entity relating to the *M.J. Brogdin* suit, and to seek reimbursement from Charles D. Cook, D/B/A Cook's Oilfield Service of any settlement or judgment paid by Admiral in the *M.J. Brogdin* suit, to the extent that no coverage for that suit exists. Admiral further reserves the right to seek reimbursement for defense costs incurred in defending claims not covered by the Admiral Policy and the costs and attorneys fees involved in a declaratory judgment action. Further, Admiral reserves the right to withdraw from defending Charles D. Cook, D/B/A Cook's Oilfield Service and/or any other person or entity claiming insurance coverage under the above-referenced insurance policy at any time.

## ADMIRAL'S RESERVATION OF RIGHTS

Cook argues that Admiral judicially admitted its duty to defend in a separate pleading before the court in which Admiral stated "Defendant has in fact already agreed to defend." The statement in the pleading referred specifically to the above-quoted letter which Admiral sent to Cook on September 17, 2009, in which Admiral agreed to defend Cook in the underlying suit "subject to Admiral's reservation of its rights to contest coverage in this matter." A copy of that letter was attached as an exhibit to the pleading in question.

In Texas, when an insurer is faced with the dilemma of whether to defend or refuse to defend a proffered claim, it has the following four options: (1) completely decline to assume the insured's defense; (2) seek a declaratory judgment as to its obligations and rights; (3) defend under a reservation of rights or a non-waiver agreement; and (4) assume the insured's unqualified defense. *Katerndahl v. State Farm Fire and Cas. Co.*, 961 S.W.2d 518, 521 (Tex.App.-San Antonio 1997) (citing *Farmers Texas County Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 522 (Tex.Civ.App.-Austin 1980)).

An insurer's reservation of rights is the notification to the insured that the insurer will defend the insured, but that the insurer is not waiving any defenses it may have under the policy; it protects an insurer from a subsequent attack on its coverage position on waiver or estoppel grounds."

*Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County,* 52 S.W.3d 128, 133 (Tex. 2000) (citations omitted).  Once a defense is taken under a valid reservation of rights, the insurer may withdraw the defense when it becomes clear that there is no coverage under the applicable policy.  *Katerndahl*, 961 S.W.2d at 521 (citing *American Eagle Ins. Co. v. Nettleton,* 932 S.W.2d 169, 174 (Tex.App.-El Paso 1996)).  The purpose of the reservation of rights letter is to permit the insurer to provide a defense for its insured while it investigates questionable coverage issues.  *Id.* (citing *J.E.M. v. Fidelity & Casualty Co.,* 928 S.W.2d 668, 673 (Tex.App.-Houston [1st Dist.] 1996)).  Under Texas law, Admiral is not barred from presently asserting it has no duty to defend Cook.

## ADMIRAL'S DUTY TO DEFEND

Admiral seeks a declaratory judgment that it has no duty to defend the state court suit because Brogdin's claims against Cook are not within the scope of coverage of the policy.

The insurance policy provides: "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Neither party asserts that this case involves "bodily injury."  Both parties acknowledge that Cook must show there was "property damage" to establish coverage.

The policy defines "property damage" as:

(a) Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
(b) Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Cook contends there was a "loss of use of tangible property that is not physically injured," as defined under (b).

The duty to defend is broader than the duty to indemnify. *Lincoln General Ins. Co. v. Aisha's Learning Center*, 468 F.3d 857, 858 (5th Cir. 2006) (citing *Gulf Chem. & Metallurgical Corp. v. Assoc. Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir. 1993)). The duty to defend is governed by the "eight-corners" rule; a court considers only the allegations in the underlying complaint and the terms of the insurance policy. *Id.* (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997)). If the petition filed against the insured, liberally construed, alleges facts within the scope of coverage, the insurer must defend. *Id.* Doubts are resolved in favor of the insured. *Id.* (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 25 (Tex. 1965)).

However, the inquiry into an insurer's duty to defend a suit focuses on the facts pled in that suit, not legal theories. *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 736 (Tex.App.-Fort Worth 1996) (citation omitted). While the pleadings must be liberally construed in the insured's favor, the interpretation must be fair and reasonable. *Id.* The insurer may rely on the allegations in the petition against the insured in deciding whether it should defend the suit; it has no duty to look *beyond* the policy and pleadings to determine if facts within coverage could have been pled. *Id.* at 736-37. If the pleadings do not allege facts within coverage, the insurer has no duty to defend. *Id.* at 737. Even broad claims of negligence will not sustain an assertion of policy coverage when the factual allegations underlying the negligence claims do not fall within coverage. *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 273 (Tex.App.-Dallas 1992).

In the state court suit, Brogdin alleged that Cook removed too much casing from the well site (the alleged breach) causing the well to be completed at too shallow a depth and requiring the well to be reworked to complete it to the specified depth. Cook contends that the damages caused fall within the definition of property damage as loss of use of tangible property that is not physically injured. He contends that it is not necessary to show that the well had actually been used in order to fall within that definition. The argument fails in this case. The well completed at the specified depth had not only not been used but could not have been used. It was not poised ready to put in action or service. It simply did not exist at the time of the breach or when the reworking was done.

The policy defines property damage as loss of use of "tangible property." Language used in insurance policies is ordinarily given its usual and popular meaning. "Tangible property is commonly understood to be property that is capable of being handled or touched." *Lay v. Aetna Insurance Company*, 599 S.W.2d 684 (Tex.Civ.App.-Austin 1980) (*citing Erwin v. Steele*, 228 S.W.2d 882 (Tex.Civ.App. Dallas 1950, *writ ref'd n.r.e.*); *Bismarck Tribune Co. v. Omdahl*, 147 N.W.2d 903 (N.D. 1966). Here, a well completed at the specified depth is not "tangible property" simply because it did not exist at the time of the alleged breach. Further, even if the policy did cover damages for the loss of use of something that had not yet been created, the Brogdin lawsuit does not allege damages for loss of use. Damages for repairs or for the cost of getting what one desired, but did not receive, are not the same thing as damages for loss of use of the thing desired.

## ADMIRAL'S DUTY TO INDEMNIFY

The duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify. *Farmers Texas*

*County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); see also *Courtland Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 395 F.Supp.2d 478, 486 (S.D. Tex. 2005). The Fifth Circuit has held that "[a]n actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment." The same reasons that negate Admiral's duty to defend Cook in Brogdin's state court lawsuit also negate Admiral's duty to indemnify.

## CONCLUSION

Admiral Insurance Company is entitled to summary judgment declaring that it does not have a duty to defend or to indemnify Cook for any judgment in *M.J. Brogdin Consulting, L.P. v. Charles Wayne Cook*, Cause No. 09-05-4162 in the 31st District Court in and for Lipscomb County, Texas.

IT IS SO ORDERED.

Signed this 29th day of June, 2010.

/s/ Mary Lou Robinson  
MARY LOU ROBINSON  
UNITED STATES DISTRICT JUDGE